Danica Anderson Glaser
District of Columbia Bar No. 1005853
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044
Phone: (202) 514-5270
Email: danica.glaser@usdoj.gov
*Attorney for Plaintiff, United States of America*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN FALLS SOLAR, LLC, <br><br> Defendant. | Civil Action No. 4:22-cv-466 |

**<u>COMPLAINT</u>**

Plaintiff, the United States of America, through its undersigned attorneys, by the authority of the Attorney General, and at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

1

## NATURE OF ACTION

1. This is a civil action for penalties brought pursuant to Section 309(b) and (d) of the Clean Water Act ("CWA"), 33 U.S.C. § 1319(b) and (d), against American Falls Solar, LLC ("AFS" or "Defendant"). During construction of a solar energy facility in American Falls, Idaho ("the Site"), Defendant failed to comply with the conditions of permits issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, for the discharge of stormwater from a construction site. Defendant also discharged stormwater without a permit in violation of Section 301 of the CWA, 33 U.S.C. § 1311.

## JURISDICTION, VENUE AND NOTICE

2. This Court has jurisdiction over the subject matter of this action pursuant to Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), and 28 U.S.C. §§ 1331, 1345 and 1355.

3. Venue is proper in this district pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391 and 1395, because Defendant conducts business in this District and because the violations occurred at the Site, which is located in this District.

4. The United States has provided notice of the commencement of this action to the State of Idaho pursuant to Section 309(b) of the Act, 33 U.S.C. § 1319(b).

5. Authority to bring this action is vested in the United States Department of Justice under 28 U.S.C. §§ 516 and 519.

## DEFENDANT

6. Defendant AFS is a limited liability company formed in Delaware and with its principal office in Arizona. AFS is a "person" as defined in Section 502 of the CWA, 33 U.S.C. § 1362(5), 40 C.F.R. § 122.2.

7.  Defendant owned and financed a portion of the solar energy facility at the Site.

8.  Defendant was appointed to oversee, administer, and manage the construction of the remainder of the facility at the Site.

## LEGAL AUTHORITY

A. Statutory & Regulatory Background

9.  The Clean Water Act is designed to restore and maintain the chemical, physical, and biological integrity of the nation's waters. 33 U.S.C. § 1251(a).

10. To accomplish the objectives of the Act, Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant" by any person except in certain circumstances, such as in compliance with a National Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

11. Section 502(12) of the CWA, 33 U.S.C. § 1362(12), defines the term "discharge of a pollutant" as, inter alia, "any addition of any pollutant to navigable waters from any point source."

12. Section 502(7) of the CWA, 33 U.S.C. § 1362(7), defines "navigable waters" as "the waters of the United States, including the territorial seas." "Waters of the United States" has been further defined to include, among other things, waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce; and tributaries of such waters. 40 C.F.R. § 122.2 (1993).

13. Section 502(14) of the CWA, 33 U.S.C. § 1362(14), defines a "point source" as "any discernable, confined and discrete conveyance… from which pollutants are or may be discharged."

14. Section 402(p) of the CWA, 33 U.S.C. § 1342(p), requires a permit for stormwater discharges "associated with industrial activity."

15. Pursuant to 40 C.F.R. § 122.26(b)(14)(x), industrial activity for which associated stormwater discharges require a permit under Section 402 of the CWA includes construction activity that disturbs five acres or more of total land area. Construction activity includes "clearing, grading, and excavation." *Id.*

16. Pursuant to Section 402(b) of the CWA, 33 U.S.C. § 1342(b), states may issue their own stormwater permits for discharges into navigable waters within their jurisdiction if they are authorized by EPA to do so. At all times relevant to this Complaint, the State of Idaho was not authorized by EPA to issue stormwater permits for construction activities. For states that have not been authorized, EPA remains the permitting authority for purposes of the CWA.

17. Under EPA's regulations, persons who discharge or who propose to discharge stormwater "associated with industrial activity" are required to apply for an individual permit or seek coverage under a promulgated stormwater general permit. 40 C.F.R. §§ 122.21(a) & (c), 122.26(c), 122.28. In applying for coverage under a stormwater individual or general permit, a potential permittee must provide the necessary information on which EPA may evaluate the appropriateness of the issuance of any such permit.

18. Under 40 C.F.R. § 122.21(c), a discharger proposing a new discharge of stormwater associated with construction activity covered by 40 C.F.R. § 122.26(b)(14)(x) must submit an application 90 days before the date construction is to commence, or by the deadlines provided by the terms of any applicable general permit. Application under a general permit is made by submitting a Notice of Intent ("NOI"), and submission of a complete and timely NOI provides the discharger with coverage under the general permit by the date specified in the permit unless notified otherwise by EPA. *See* 40 C.F.R. § 122.28(b)(2).

B. The Federal Construction General Permit

19. In 1992, EPA issued a Final NPDES General Permit for Stormwater Discharges from Construction Sites, known as the "Construction General Permit" or CGP (hereinafter "Federal CGP"). 57 Fed. Reg. 41176 (Sept. 9, 1992). EPA has subsequently modified and reissued this general permit several times. The versions applicable at all times relevant to this Complaint are the versions issued in 2012 ("the 2012 Federal CGP") and in 2017 ("the 2017 Federal CGP"). See 77 Fed. Reg. 12286 (Feb. 29, 2012); 82 Fed. Reg. 6534 (Jan. 19, 2017).

20. A person must obtain coverage under the Federal CGP prior to discharging stormwater if that person engages in construction that meets the definition of "industrial activity" pursuant to 40 C.F.R. § 122.26(b)(14)(x) and either (i) has operational control of construction project plans and specifications, or (ii) has day-to-day operational control of those activities which are necessary to ensure compliance with permit conditions.

21. All operators associated with a construction site are required to submit a complete, accurate, and timely NOI at least 14 days before commencing construction activities in order to be covered under the Federal CGP. 2012 Federal CGP Part 1.4 (Note), 2017 Federal CGP Part 1.4. All operators are further required to develop a Stormwater Pollution Prevention Plan ("SWPPP") for the construction site, which sets forth a plan to control and reduce pollutants in stormwater, prior to submitting their NOI. 2012 Federal CGP Part 7.1.1; 2017 Federal CGP Part 7.1.

22. Operators of new sites are considered covered by the Federal CGP 14 days after EPA acknowledges receipt of a submitted NOI. 2012 Federal CGP Part 1.4.2 (Table 1), 2017 Federal CGP Part 1.4.3 (Table 1). Operators covered by the 2012 Federal CGP who wished to continue coverage under the 2017 Federal CGP were required to submit a NOI by May 17, 2017. 2017 Federal CGP Part 1.4.3 (Table 1). For operators who missed that deadline, any and all

5

subsequent discharges from the construction activities would be unauthorized unless and until new permit coverage was obtained. *Id.* at n.7.

23. Operators that are covered by the Federal CGP are authorized to discharge stormwater from construction activities, "provided that appropriate stormwater controls are designed, installed, and maintained." 2012 Federal CGP Part 1.3; 2017 Federal CGP Part 1.2.1.

24. Part 2 of the Federal CGP contains requirements to minimize the discharge of pollutants in stormwater from construction activities, in particular by minimizing erosion and sediment runoff. Permittees must, *inter alia,* design appropriate stormwater controls, install those controls prior to beginning earth-disturbing activities, and maintain those controls in effective operating condition through regular inspections, repairs, and modifications; minimize exposed soil during construction and timely initiate soil-stabilization measures when construction ceases or in any areas of exposed soil where construction activities have stopped for 14 days or longer; comply with specified requirements for dewatering activities; minimize disturbance to steep slopes, sediment track-out, and exposure of wastes to stormwater during construction; maintain protections for storm drain inlets; install and maintain perimeter controls; prevent discharges of concrete washout wastewater; and protect nearby waterways through natural buffers or equivalent controls.

25. Part 3 of the Federal CGP contains limitations to protect water quality including, *inter alia*, that permittees must control discharges "as necessary to meet applicable water quality standards," including any requirements imposed by the state, and take corrective actions if those standards are not met. In addition, sites discharging to sediment- or nutrient-impaired waters are subject to further inspection and soil stabilization requirements.

26. Part 4 of the Federal CGP sets forth requirements for site inspections by the permittee. Inspections must, *inter alia*, be performed by a "qualified person" at a frequency specified in the CGP; cover areas of the site specified in the CGP, including all points of discharge from the site; check for the presence of certain conditions, including discharges, sedimentation, and erosion; identify any noncompliance with the permit; and check the status of control measures and the need for additional controls. Permittees must also timely complete self-inspection reports summarizing their observations and findings and retain signed copies of those reports.

27. Part 5 of the Federal CGP prescribes corrective action requirements to address failing stormwater controls, spills and releases, or other permit violations. In general, whenever required stormwater controls are not installed or installed controls are ineffective, permittees must "immediately take all reasonable steps" to address the problem, and then implement a permanent solution in a timely manner. Where corrective actions are taken, permittees must prepare a timely corrective action report containing certain information and must modify the SWPPP accordingly to reflect any changed controls or procedures. And under the 2012 Federal CGP, permittees must notify EPA if existing stormwater controls are found to be inadequate.

28. Part 7 of the Federal CGP addresses SWPPP requirements. The SWPPP must, *inter alia*, identify specific personnel responsible for SWPPP and permit compliance, site inspections, and spill and leak response; include a detailed project schedule, a site map with certain required features, and the location of the source for rainfall data; identify the natural buffers to be employed, and all stormwater control measures, including soil stabilization practices; describe procedures for inspection, maintenance, and corrective action; and document appropriate training of personnel. Permittees must maintain signed, dated copies of the SWPPP,

modify the SWPPP in a timely manner whenever certain conditions are met, and maintain records of those modifications.

C. Enforcement Authority

29. Section 308 of the CWA, 33 U.S.C. § 1318, requires owners and operators of point sources to submit information to EPA as needed to carry out the objectives of the Act, including the NPDES permit program under Section 402 of the CWA, 33 U.S.C. § 1342.

30. Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes the Administrator of EPA "to commence a civil action for appropriate relief, including a permanent or temporary injunction," when any person is in violation of 33 U.S.C. § 1311 or of any condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

31. Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides, in part, that any person who violates 33 U.S.C. § 1311 or any condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, shall be subject to a civil penalty not to exceed $59,973 per day for each such violation occurring after November 2, 2015, where penalties are assessed on or after January 12, 2022. 33 U.S.C. § 1319(d); 87 Fed. Reg. 1676 (Jan. 12, 2022) (codified at 40 C.F.R. pt. 19).

## ALLEGATIONS

A. Construction at the Site

32. The Site consists of approximately 357 acres of previously undeveloped agricultural land at the corner of Ramsey Road and Smith Road, about six miles northeast of American Falls, Idaho.

33. In 2016, Defendant and a related entity, American Falls Solar II, LLC ("AFS II"), entered into contracts with an unrelated entity, Swinerton Builders ("Swinerton"), to develop the

Site into a 40-megawatt photovoltaic solar generation site (commonly known as a solar farm) consisting of solar panel arrays, inverters, a substation, and associated roads for service, maintenance and access. Half of the facility would be owned by Defendant, and half by AFS II.

34. Under the contract between Swinerton and Defendant, Swinerton would serve as the engineering, procurement, and construction contractor for the project.

35. Swinerton could not make any changes in the work or materials for the Site without Defendant's approval of a change order.

36. On or about May 10, 2016, AFS II appointed Defendant "with full authority to oversee, administer, and manage" the contract between Swinerton and AFS II and any related matters.

37. On or about November 17, 2016, Defendant and AFS II entered into a Shared Facilities Agreement, under which Defendant served as the manager responsible for operating and maintaining certain shared assets. The shared assets included the Federal CGP for the Site.

38. On or about August 22, 2016, contractors hired by Defendant began construction of the solar farm at the Site.

39. Between approximately August 22, 2016 and October 2016, contractors hired by Defendant cleared approximately 357 acres of land at the Site of vegetation.

40. Between approximately August 22, 2016 and November 4, 2017, contractors hired by Defendant performed the following activities on approximately 357 acres of land at the Site: removing vegetation, grading and regrading, construction of solar panel arrays, road construction, perimeter fence construction, substation construction, electrical cable installation, substation construction, revegetation, and earthworks.

41. The activities described in Paragraphs 39-40 are "construction activity" within the meaning of 40 C.F.R. § 122.26(b)(14)(x).

42. Defendant had operational control over construction plans and specifications for the Site, including the ability to make modifications to those plans and specifications.

43. Defendant met the definition of owner or operator under 40 C.F.R. § 122.2 and the Federal CGP.

44. At the Site, Defendant engaged in construction activities that resulted in the disturbance of at least five acres.

45. Defendant's construction activities resulted in the discharge of stormwater containing sediments and other pollutants from the Site.

46. The stormwater passed through culverts under Smith Road into Blind Spring Creek – a tributary to Seagull Bay – and traveled downstream into Seagull Bay and ultimately into American Falls Reservoir.

47. The stormwater discharges from the Site during construction activities constitute discharges of a "pollutant" within the meaning of the CWA. 33 U.S.C. §§ 1311, 1362(6), 1362(12).

48. The stormwater discharges associated with construction activity at the Site constitute discharges from a "point source" within the meaning of the CWA. 33 U.S.C. §§ 1362(14) and 1342(p); 40 C.F.R. §§ 122.1 and 122.26.

49. American Falls Reservoir, including Seagull Bay, is a traditionally navigable water.

50. Blind Spring Creek is a tributary of Seagull Bay with relatively permanent flow.

51. Blind Spring Creek, Seagull Bay, and American Falls Reservoir constitute "navigable waters" and "waters of the United States" within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7), and 40 C.F.R. § 122.2 (1993).

52. Seagull Bay is considered part of American Falls Reservoir for purposes of water quality assessment. American Falls Reservoir and Seagull Bay are impaired for sediment, dissolved oxygen, and nutrients. Blind Spring Creek, as a tributary to Seagull Bay, is included in the American Falls Reservoir Total Maximum Daily Load for nutrients.

B. Defendant's Permit Coverage

53. Defendant was a person that proposed to discharge stormwater associated with industrial activity during construction at the Site, and was required to timely apply for and maintain coverage under the Federal CGP or an individual permit, pursuant to Sections 308 and 402(p) of the CWA, 33 U.S.C. §§ 1318 and 1342(p), 40 C.F.R. §§ 122.21(a), (c), 122.26(c), and 122.28.

54. In order to obtain and maintain coverage under the Federal CGP, Defendant was required to submit a complete, accurate, and timely NOI.

55. On July 14, 2016, Defendant submitted a NOI for the Site, listing itself as the "Operator" and seeking coverage under the 2012 Federal CGP. EPA acknowledged receipt of the NOI that day and Defendant was covered under the 2012 Federal CGP effective July 28, 2016.

56. In conjunction with the July 14, 2016 NOI, a SWPPP for the Site was prepared on Defendant's behalf in July 2016 ("the 2016 SWPPP").

57. Defendant did not submit an NOI to continue its permit coverage under the re-issued 2017 Federal CGP by May 17, 2017, as was required for operators of existing sites.

Instead, it submitted its NOI on June 7, 2017, and was covered under the 2017 Federal CGP effective June 21, 2017.

58. A revised SWPPP was also prepared on Defendant's behalf in May 2017 ("the 2017 SWPPP").

59. Defendant submitted a Notice of Termination ("NOT") on November 4, 2017, and its coverage under the Federal CGP for activities at the Site ended on that date.

60. As described in Paragraph 57, Defendant did not have a valid Federal CGP for construction at the Site for the period between May 17, 2017 and June 21, 2017. As a result, during that lapse in coverage, Defendant's activities were not covered by the Federal CGP or any permit issued in compliance with the CWA.

C. Investigations of the Site

61. On several occasions in January and February 2017, representatives from the Idaho Department of Environmental Quality ("IDEQ") conducted technical assistance site visits at the Site.

62. On multiple occasions during these visits, IDEQ personnel observed discharges of water from the Site, carrying sediment and eroded materials across Smith Road and into Blind Spring Creek.

63. During these visits, IDEQ personnel also observed and recorded numerous other stormwater issues at the Site, including but not limited to: improperly designed, installed, and maintained stormwater controls; failure to protect storm drain inlets and stabilize soil; discharges of turbid water that violated water quality standards; and failure to take corrective actions and prepare corrective action reports.

64. On February 23, 2017, an IDEQ inspector conducted a Compliance Evaluation Inspection at the Site. The inspector documented significant areas of concern in the inspection report, including but not limited to: improperly designed, installed, and maintained stormwater controls; direct discharges to vegetated areas; failure to minimize the disturbance of steep slopes, apply a non-vegetative cover, and immediately stabilize soils; insufficient self-inspections and noncompliant self-inspection reports; failure to properly update the SWPPP; discharges of turbid water that violated water quality standards; and failure to take corrective actions and prepare corrective action reports.

65. In October 2018, EPA sent an information request to Swinerton pursuant to Section 308 of the CWA, 33 U.S.C. § 1318, requesting information about stormwater issues at the Site. Swinerton provided materials in response in December 2018 and February 2019, including copies of contracts, self-inspection reports, SWPPPs, and NOIs.

66. On May 6, 2020, EPA sent an information request to Defendant pursuant to Section 308 of the CWA, 33 U.S.C. § 1318, requesting information about stormwater issues at the Site. Defendant provided materials in response between June and August 2020, including copies of contracts, self-inspection reports, SWPPPs, NOIs, documentation of construction and stormwater-control activities at the Site, written correspondence, monitoring information, and documentation of construction schedules at the Site.

67. The self-inspection reports and other materials provided to EPA documented numerous occasions, in addition to the incidents observed by IDEQ as described in Paragraph 62, where stormwater discharged from the Site to culverts under Smith Road and into Blind Spring Creek.

13

68. The self-inspection reports and other materials provided to EPA documented many other incidents of significant noncompliance with the requirements of the Federal CGP and the SWPPPs for the Site, in addition to the noncompliance documented by IDEQ as described in Paragraphs 63 and 64.

D. Unauthorized Discharges

69. As noted in Paragraph 62, on multiple occasions in January and February 2017 IDEQ personnel observed stormwater discharging from the Site.

70. As noted in Paragraph 67, multiple additional incidents of stormwater discharging from the Site were documented in materials provided to EPA.

71. On information and belief, on numerous additional occasions while construction activities were ongoing, stormwater was discharged from the Site. These occasions included discharges between May 17, 2017 and June 21, 2017.

72. On information and belief, the discharges described in Paragraphs 69 to 71 contained sediment and other pollutants, and entered waters of the United States, namely Blind Spring Creek.

E. Federal CGP Violations

73. Defendant failed to meet the limitations in Part 2 of the Federal CGP because it did not minimize erosion and sediment runoff throughout the period of construction activities at the Site. Defendant failed to design appropriate stormwater controls, did not install them prior to beginning earth-disturbing activities, and failed to maintain them in effective operating condition. Defendant did not minimize exposed soil during construction or initiate soil-stabilization measures in a timely manner. Defendant failed to minimize disturbance to steep slopes, did not install or maintain adequate perimeter controls or minimize sediment track-out,

did not follow dewatering discharge requirements, failed to prevent concrete washout wastewater discharges, and left wastes exposed to stormwater during construction. And Defendant did not protect storm drain inlets or provide natural buffers or equivalent controls to protect Blind Spring Creek.

74. Defendant failed to meet the limitations in Part 3 of the Federal CGP because it did not control discharges and take corrective actions to meet applicable water quality standards established by the State of Idaho, and did not comply with the inspection and soil stabilization requirements for sites discharging to impaired waters.

75. Defendant failed to meet the conditions in Part 4 of the Federal CGP because it did not meet requirements for site inspections contained in the Federal CGP. Defendant did not inspect the Site on the required schedule or use qualified personnel for inspections. Inspectors did not inspect all required areas of the Site or check for the presence of required conditions, did not prepare timely self-inspection reports that accurately summarized their observations and findings, and did not sign their self-inspection reports.

76. Defendant failed to meet the conditions in Part 5 of the Federal CGP because it did not promptly implement required corrective actions at the Site to address failing stormwater controls and other permit violations. Defendant did not "immediately take all reasonable steps" to address identified problems, nor did it notify EPA of ineffective stormwater controls. And when Defendant did take corrective actions, it did not prepare adequate corrective action reports, or modify the SWPPP to account for changed controls and procedures.

77. Defendant failed to meet the conditions in Part 7 of the Federal CGP because it failed to prepare adequate SWPPPs for the Site. Both the 2016 and 2017 SWPPPs did not accurately describe all stormwater control measures used at the Site, including specific soil

stabilization practices; did not identify natural buffers or equivalent sediment controls to protect Blind Spring Creek; and did not fully describe inspection, maintenance, and corrective action procedures. Both SWPPPs also failed to identify personnel responsible for SWPPP and permit compliance, or for spill and leak response; did not include a rainfall data source; and did not include required surface waters on the site maps included in the SWPPPs. Neither of the SWPPPs documented personnel training or any SWPPP modifications, and neither SWPPP was signed or dated. In addition, the 2016 SWPPP did not identify Site inspectors or provide a detailed project schedule, and its site map lacked additional required features.

## FIRST CLAIM FOR RELIEF

### (Discharges in Violation of Section 301 of the CWA)

78. Plaintiff realleges and incorporates by reference Paragraphs 1 through 77.

79. Defendant's operations at the Site between May 17, 2017 and June 21, 2017, were not covered by the Federal CGP.

80. The discharges described in Paragraph 71 that occurred during that time period were discharges of pollutants from a point source to waters of the United States that were not authorized by any permit issued in compliance with Section 402 of the CWA, and are violations of Section 301 of the CWA, 33 U.S.C. § 1311.

81. Defendant did not design, install or maintain appropriate stormwater controls at the Site. As a result, each of the discharges identified in Paragraphs 69 through 71 were discharges of pollutants from a point source to waters of the United States that were not authorized by the Federal CGP or any permit issued in compliance with Section 402 of the CWA, and each such discharge is a violation of Section 301 of the CWA, 33 U.S.C. § 1311.

82. As described in Paragraphs 30 and 31, for each violation referred to in this Claim for Relief, the United States is entitled to civil penalties for each day of violation, pursuant to Section 309 of the CWA, 33 U.S.C. § 1319.

## SECOND CLAIM FOR RELIEF

### (Failure to Comply with the Federal CGP)

83. Plaintiff realleges and incorporates by reference Paragraphs 1 through 77.

84. During the periods between July 2016 and November 2017 in which Defendant had valid permit coverage for its operations at the Site under the Federal CGP, Defendant violated permit conditions and limitations in Parts 2, 3, 4, 5, and 7 of the Federal CGP.

85. Each failure to comply with a permit condition and/or limitation identified in Paragraphs 73 through 77 is a separate violation of the Federal CGP.

86. As described in Paragraphs 30 and 31, for each violation referred to in this Claim for Relief, the United States is entitled to civil penalties for each day of violation, pursuant to Section 309 of the CWA, 33 U.S.C. § 1319.

## PRAYER FOR RELIEF

WHEREFORE, the United States of America respectfully requests that the Court grant the following relief:

1. Order Defendant to pay a civil penalty pursuant to Section 309 of the CWA, 33 U.S.C. § 1319;

2. Award the United States its costs and disbursements in this action; and

3. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice


 *s/ Danica Anderson Glaser*
DANICA ANDERSON GLASER
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, DC 20044
(202) 514-5270
Danica.Glaser@usdoj.gov

JOSHUA D. HURWIT, Idaho State Bar No. 9527
UNITED STATES ATTORNEY
CHRISTINE G. ENGLAND, Idaho State Bar No. 11390
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO


OF COUNSEL:

Patrick Johnson
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 10
Alaska Operations Office
222 West 7th Avenue, #19
Anchorage, Alaska 99513-7588
(907) 271-3914